1 LOUIS P. PETRICH (State Bar No. 038161)
ABIGAIL A. JONES (State Bar No. 122027)
2 ELIZABETH L. SCHILKEN (State Bar No. 241231)
LEOPOLD, PETRICH & SMITH, P.C.
3 2049 Century Park East, Suite 3110
Los Angeles, California 90067-3274
4 Tel: (310) 277-3333 • Fax: (310) 277-7444
E-Mail: lpetrich@lpsla.com; ajones@lpsla.com;
5 eschilken@lpsla.com

6 JEFFREY R. WILLIAMS (State Bar No. 84156)
VICTORIA HARTANTO (State Bar No. 259833)
7 SCHIFF HARDIN LLP
One Market, Spear Street Tower, 32nd Fl.
8 San Francisco, California 94105
Tel: (415) 901-8700 • Fax: (415) 901-8701
9 E-Mail: jrwilliams@schiffhardin; vhartanto@schiffhardin.com

10 Attorneys for Defendants The Walt Disney Company, Walt
Disney Pictures (sued herein as Walt Disney Animation Studios
11 and as Walt Disney Feature Animation), Disney Book Group,
LLC (sued herein as Disney Press), Disney Enterprises, Inc.,
12 and Pixar (sued herein as Pixar Animation Studios)

13 **UNITED STATES DISTRICT COURT**

14 **NORTHERN DISTRICT**

15 **SAN JOSE DIVISION**

16

17 KATHLEEN C. CAMPBELL,                    **CASE NO.: C-09-03005 JW (HRL)**

Plaintiffs,                  **NOTICE OF MOTION AND**
18                                          **MOTION TO DISMISS BY**
                                            **DEFENDANTS THE WALT DISNEY**
19 v.                                       **COMPANY, WALT DISNEY**
                                            **PICTURES, DISNEY BOOK GROUP,**
20 THE WALT DISNEY COMPANY;                 **LLC, DISNEY ENTERPRISES, INC.,**
WALT DISNEY ANIMATION                       **AND PIXAR; MEMORANDUM OF**
21 STUDIOS; DISNEY PRESS; WALT              **POINTS AND AUTHORITIES IN**
DISNEY FEATURE ANIMATION;                   **SUPPORT THEREOF**
22 WALT DISNEY PICTURES; DISNEY
ENTERPRISES; PIXAR ANIMATION                [Request for Judicial Notice filed
23 STUDIOS, and DOES 1-20,                  concurrently; Notice of Lodging,
                                            Appendix, and Proposed Order lodged
Defendants.                  concurrently.]
24

25                                          **CTRM:** 8
                                            **DATE:** March 29, 2010
26                                          **TIME:** 9:00 a.m.

27                                          (U.S. District Judge James Ware)

28

USDC CASE NO.: C-09-03005 JW (HRL)

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc     DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  TO PLAINTIFF (IN PRO PER):

2      PLEASE TAKE NOTICE that on March 29, 2010, at 9:00 a.m., or as soon

3  thereafter as the matter may be heard in the above-entitled court, located at 280 South

4  1st Street, San Jose, California 95113, Fourth Floor, Courtroom 8, defendants The

5  Walt Disney Company, Walt Disney Pictures, Disney Book Group, LLC, Disney

6  Enterprises, Inc., and Pixar (collectively, "Defendants") will and hereby do move the

7  Court to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6).

8      Defendants request dismissal of Plaintiff's complaint without leave to amend.

9  Plaintiff's complaint fails to state a claim upon which relief can be granted, on the

10  following grounds:  (i) the First Cause of Action for copyright infringement fails

11  because the two works at issue, Defendants' animated motion picture *Cars* and

12  Plaintiff's live-action motion picture screenplay *The Challenge*, are not substantially

13  similar as a matter of law; (ii) the Second Cause of Action for unjust

14  enrichment/quasi-contract fails because it is time-barred and because it is preempted

15  by federal copyright law; and (iii) the Third Cause of Action for constructive trust and

16  accounting fails because it is time-barred and because it is preempted by federal

17  copyright law.

18      This motion is based upon this Notice of Motion and Motion, the Memorandum

19  of Points and Authorities filed herewith, and the accompanying Request for Judicial

20  Notice, Notice of Lodging, and Proposed Order, the pleadings and papers filed herein,

21  and other argument as the Court may deem proper.

22

23  DATED:  January 7, 2010

LOUIS P. PETRICH
24  ABIGAIL A. JONES
ELIZABETH L. SCHILKEN
25  LEOPOLD, PETRICH & SMITH
A Professional Corporation
26  Attorneys for Defendants
The Walt Disney Company, Walt Disney
27  Pictures, Disney Book Group, LLC,
Disney Enterprises, Inc., and Pixar

28

USDC CASE NO.: C-09-03005 JW (HRL)      1
17792.doc          DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

TABLE OF CONTENTS

2
                                                                        Page

3

4    MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

5    I.     INTRODUCTION ....................................................................... 1

6           A.    Allegations of Complaint ................................................. 2

            B.    Legal Standard ................................................................ 2
7
            C.    A Court May Dismiss a Copyright Claim for Lack of Substantial
8                 Similarity on a Rule 12(b) (6) Motion .................................... 3

            D.    The Court May Take Judicial Notice of The Two Works ................. 3
9
            E.    Summary of Defendants' Motion Picture *Cars* ........................ 4
10
            F.    Summary of Plaintiff's Screenplay *The Challenge* .................... 9

11   II.    THE COPYRIGHT CLAIM ............................................................ 12

12          A.    Unlawful Appropriation ("Substantial Similarity of Protected
                  Expression") ................................................................. 12
13
            B.    Extrinsic Test ................................................................. 14
14                1.    No Substantial Similarity as To Plot and Sequences of
                        Events ............................................................... 14
15
                  2.    No Substantial Similarity As To Characters ..................... 15
16
                  3.    No Substantial Similarity As To Themes ........................ 17
17                4.    No Substantial Similarity as to Settings ........................ 17

                  5.    There Is No Similarity as to Mood ............................... 18
18
                  6.    There Is No Similarity as to Pace ................................ 18
19
                  7.    No Substantial Similarity as to Dialogue ........................ 19

20   III.   PLAINTIFFS' STATE LAW CLAIMS OF UNJUST ENRICHMENT
            AND CONSTRUCTIVE TRUST ARE TIME-BARRED .......................... 20
21
     IV.    PLAINTIFF' STATE LAW CLAIMS ARE PREEMPTED BY THE
22          COPYRIGHT ACT .................................................................. 20

23   V.     CONCLUSION ........................................................................ 24

24

25

26

27

28

USDC CASE NO.: C-09-03005 JW (HRL)          i

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc     DEFENDANTS NOTICE & MOTION TO DISMISS
              MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

## TABLE OF AUTHORITIES

2
Page

3

4
**Cases**

5
*Am. Movie Classics Co. v. Turner Entm't Co.*
 922 F.Supp. 926 (S.D.N.Y. 1996)...................................................................23

6
*Apple Computer, Inc. v. Microsoft Corp.,*
 35 F.3d 1435 (9th Cir. 1994)........................................................................14

7

8
*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..........................................2

9
*Berkic v. Crichton,*
 761 F.2d 1289 (9th Cir. 1985) ...............................................12, 13, 14, 15, 18, 19

10

11
*Briarpatch Ltd. v. Phoenix Pictures, Inc.,*
 373 F.3d 296 (2d. Cir. 2004), *cert. denied,* 544 U.S. 949, 125 S.Ct. 1704, 161
 L.Ed.2d 525 (2005) ...................................................................................23

12

13
*Brown Bag Software v. Symantec Corp.,*
 960 F.2d 1465 (9th Cir. 1992) ......................................................................14

14
*Capcom Co., Ltd. v. MKR Group*, Inc.,
 2008 WL 4661479, *9 (N.D. Cal.) ................................................................3, 4

15

16
*Cavalier v. Random House, Inc.,*
 297 F.3d 815 (9th Cir. 2002).............................................................12, 14, 15, 16

17
*Chase-Riboud v. Dreamworks, Inc.,*
 987 F.Supp. 1222 (C.D. Cal. 1997) ................................................................16

18

19
*Christianson v. West Publishing Co.,*
 149 F. 2d 202 (9th Cir. 1945)..........................................................................3

20
*Clegg v. Cult Awareness Network,*
 18 F.3d 752 (9th Cir. 1994)............................................................................3

21

22
*Del Madera Properties v. Rhodes and Gardner, Inc.,*
 820 F.2d 973 (9th Cir. 1987)..............................................................20, 21, 22

23
*Dumas v. Kipp,*
 90 F.3d 386 (9th Cir. 1996)............................................................................3

24

25
*Ehat v. Tanner,*
 780 F.2d 876 (10th Cir. 1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d
 39 (1986) ...............................................................................................23

26

27
*Entous v. Viacom International, Inc.,*
 151 F.Supp.2d 1150 (C.D. Cal. 2001) ..............................................................21

28

**USDC CASE NO.: C-09-03005 JW (HRL)**     ii

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc    DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

# TABLE OF AUTHORITIES

2

Page

3

4
*Feist Publications, Inc. v. Rural Tele. Serv. Co.*,
499 U.S. 340, 1115 S.Ct. 1282, 113 L.Ed.2d 358 (1991)....................................12, 13

5
*Filet Menu, Inc. v. Cheng*,
71 Cal. App. 4th 1276, 84 Cal.Rptr.2d 384 (1999)........................................20

6

7
*Fogerty v. Fantasy, Inc.* (1994)
510 U.S. 517; 114 S.Ct. 1023; 127 L.Ed.2d 455 ..............................................21

8
*Funky Films, Inc. v. Time Warner Entert. Co.*,
462 F.3d 1072 (9th Cir. 2006).........................................................12, 13, 14

9

10
*Gottlieb Development LLC v. Paramount Pictures Corp.*,
590 F.Supp.2d 625 (S.D.N.Y. 2008)..............................................................3

11
*Harper & Row, Publishers v. Nation Enterprises*,
471 U.S. 539, 85 L.Ed.2d 588, 105 S.Ct. 2218 (1985)......................................13

12

13
*Harper House, Inc. v. Thomas Nelson, Inc.*,
889 F.2d 197 (9th Cir. 1989)......................................................................13

14
*In re Stac Electronics Securities Litigation*,
89 F.3d 1399 (9th Cir. 1996).......................................................................3

15

16
*Klekas v. EMI Films, Inc.*,
150 Cal.App.3d 1102 (1984)......................................................................22

17
*Kouf v. Walt Disney Pictures & Television*,
16 F.3d 1042 (9th Cir. 1994)..........................................................12, 14, 16, 19

18

19
*Kourtis v. Cameron*,
419 F.2d 989 (9th Cir. 2005), *abrogated on other grounds*, 128 S.Ct. 2161, 171
L.Ed.2d 155 (2008) ................................................................................20

20

21
*Laws v. Sony Music Entertainment, Inc.*,
294 F.Supp.2d 1160 (C.D. Cal. 2003) ......................................................21, 24

22
*Laws v. Sony Music Entertainment, Inc.*,
448 F.3d 1134 (9th Cir. 2006), *cert. denied*, 549 U.S. 1252, 127 S.Ct. 1371, 167
L.Ed.2d 159 (2007) ................................................................................21

23

24
*Litchfield v. Spielberg*,
736 F. 2d 1352 (9th Cir. 1994)....................................................................19

25

26
*Maheu v. CBS, Inc.*,
201 Cal.App.3d 662 (1988).......................................................................22

27
*Mattel, Inc. v. Bryant*,
441 F.Supp.2d 1081 (C.D. Cal. 2005) ...........................................................21

28

USDC CASE NO.: C-09-03005 JW (HRL)        iii

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc        DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

## TABLE OF AUTHORITIES

2

Page

3

4
*Metcalf v. Bochco,*
   294 F.3d 1069 (9th Cir. 2002) .......................................................................13

5
*Motown Record Corp. v. George A. Hormel & Co.,*
   657 F.Supp. 1236 (C.D. Cal. 1987) ...............................................................24

6

7
*Narrell v. Freeman,*
   872 F.2d 907 (9th Cir. 1989)..........................................................................19

8
*National Basketball Ass'n v. Motorola, Inc.,*
   105 F.3d 841 (2d Cir. 1997)...........................................................................21

9

10
*Nelson v. PRN Prods.,*
   873 F.2d 1141 (8th Cir. 1989) ..........................................................................3

11
*Newton v. Diamond,*
   388 F. 3d 1189 (9th Cir. 2004) .......................................................................13

12

13
*Nichols v. Universal Pictures Corp.,*
   42 F. 2d 119 (2d Cir. 1930)............................................................................17

14
*Olson v. National Broadcasting Co.,*
   855 F.2d 1446 (9th Cir. 1988) ........................................................13, 16, 18, 19

15

16
*ProCD, Inc. v. Zeidenberg,*
   86 F.3d 1447 (7th Cir. 1996)..........................................................................21

17
*Randolph v. Dimension Films,*
   630 F.Supp.2d 741 (S.D. Tex. 2009) ...............................................................3

18

19
*Rice v. Fox Broadcasting Co.,*
   330 F.3d 1170 (9th Cir. 2003) ...............................................................14, 16, 19

20
*See v. Durang,*
   711 F.2d 141 (9th Cir. 1983)..........................................................................14

21

22
*Shaw v. Lindheim,*
   919 F.2d 1353 (9th Cir. 1990) ........................................................................13

23
*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,*
   562 F.2d 1157 (9th Cir. 1977) ...................................................................13, 14

24

25
*Systems XIX, Inc. v. Parker,*
   30 F.Supp.2d 1225 (N.D. Cal. 1998) ..............................................................22

26
*Tessler v. NBC Universal, Inc.,*
   2008 WL 5781733, *3-4 (E.D. Va. 2008) .........................................................3

27

28
*Thomas v. Walt Disney Co.,*
   2008 WL 425647, *5 (N.D. Cal.) ...................................................................3, 4

USDC CASE NO.: C-09-03005 JW (HRL)          iv

17792.doc                    DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

TABLE OF AUTHORITIES

Page

*United States ex rel. Berge v. Board of Trustees of University of Alabama,*
    104 F.3d 1453 (4th Cir. 1997), *cert. denied*, 522 U.S. 916, 118 S.Ct. 301, 139
    L.Ed.2d 232 (1997) ...................................................................................21

*Walker v. Time Life Films, Inc.,*
    784 F.2d 44 (2d Cir. 1986)..............................................................................4

*Warner Bros. Inc. v. ABC,*
    720 F.2d 231 (2d Cir. 1983)..........................................................................16

*Western Mining Council v. Watt,*
    643 F. 2d 618 (9th Cir. 1981).........................................................................3

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir. 1996)..............................................................13, 18, 19

*Wrench LLC v. Taco Bell Corp.,*
    256 F.3d 446 (6th Cir. 2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151
    L.Ed.2d 885 (2002) ...................................................................................21

*Zella v. The E.W. Scripps Co.,*
    529 F. Supp. 1124 (C.D. Cal. 2007) .....................................................3, 4, 19

**Statutes**

United States Copyright Act

17 U.S.C. § 101 ....................................................................................................1

17 U.S.C. § 102(a) .......................................................................................21, 23

17 U.S.C. § 102(b) .......................................................................................12, 21

17 U.S.C. § 103(a) .............................................................................................21

17 U.S.C. § 106 ...................................................................................................2

17 U.S.C. §301 ...................................................................................................21

Cal. Civ. Proc. § 339(1) ....................................................................................20

**Treatises**

M. & D. Nimmer, *Nimmer On Copyright* (2009)

Vol. 4: § 13.01....................................................................................................12

Vol. 4 : § 13.01[B]..............................................................................................12

Vol. 4: § 13.03[A][l][b] .....................................................................................13

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc        DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

Page

Vol. 4: § 13.01[A] ..........................................................................................12

Vol. 4: § 13.03[A] ..........................................................................................13

Vol. 4: § 13.03[A][2] .....................................................................................13

Vol. 4: § 13.03[D] ..........................................................................................12

Vol. 4: § 13.03[E][3] ......................................................................................14

B. Witkin, Cal. Procedure, Actions (5th ed. 2008)

Vol. 3: §482......................................................................................................20

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc      DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Kathleen C. Campbell alleges that defendants The Walt Disney Company, Walt Disney Pictures, Disney Book Group, LLC, Disney Enterprises, Inc., and Pixar (collectively "Defendants") copied from her unproduced screenplay entitled *The Challenge*. *The Challenge* is a live action drama about a troubled teenager's survival and has no animation or comedy. The young hero, mocked for his poverty, proves himself by surviving a harsh and physically challenging off-road race in the Mexican desert. During his journey, he is shot at by drug dealers, accidentally chops off his own finger and nearly dies from exposure. In contrast, in Defendants' heartfelt animated family comedy *Cars* – in which most of the characters are colorful talking cars – the hero is a cheerfully arrogant young red race car. After being arrested for speeding in the fictional small town of Radiator Springs, he is ordered to repair a road before he can leave. He learns the value of friendship and that winning isn't everything.

Defendants move for dismissal of Plaintiff's first cause of action for copyright infringement on the ground that *Cars* is not substantially similar to any protected expression in *The Challenge*, one of the required elements of an infringement claim under the Copyright Act, 17 U.S.C. § 101, et seq. ("Copyright Act"). The Ninth Circuit has made clear that when the copyrighted work and the alleged infringement are both before the court, non-infringement because of lack of substantial similarity can be determined on a motion to dismiss regardless of any alleged access to Plaintiff's work.

Plaintiff's state law claims for unjust enrichment and constructive trust are equally without merit. First, based upon the allegations in the Complaint, these claims are barred by the applicable two-year California statute of limitations. Second, as her state law claims do not allege any additional element beyond that required to prove copyright infringement, they are preempted by the Copyright Act and should be

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

1    dismissed for that additional reason.

2    ## A.    Allegations of Complaint

3    Plaintiff alleges that she obtained a federal copyright for a screenplay entitled

4    *The Challenge* in 2000 and sent it to The Walt Disney Company in 2001.  Complaint

5    ("Cpt.") ¶10.  She next alleges that Defendants later copied her "unique story" in

6    making the animated motion picture *Cars*.  Cpt., ¶12.  Plaintiff alleges that she

7    discovered her claim when she saw *Cars* in August 2006.  Cpt., ¶13.  However, she

8    did not file her Complaint until July 6, 2009, nearly three years later.

9    Plaintiff's first claim is one for copyright infringement under 17 U.S.C. § 106.

10   Her second claim is denominated "Quasi-Contract-Unjust Enrichment."  In that claim,

11   she alleges that defendants have been unjustly enriched by their alleged use of her

12   copyrighted material.  Cpt., ¶22-25.  In her third claim, she seeks a "Constructive

13   Trust and Accounting" for all profits Defendants earned because of the alleged

14   infringement of her copyright.  Cpt., ¶ 28-31.  Plaintiff's state law claims do not allege

15   any conduct other than Defendants' alleged unauthorized use of her copyrighted

16   material.

17   Defendants respectfully request the Court dismiss Plaintiff's Complaint in its

18   entirety.

19   ## B.    Legal Standard

20   A motion to dismiss brought under Federal Rules of Civil Procedure ("FRCP")

21   12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  A claim may

22   be dismissed if it does not allege facts sufficient to raise a right to the relief requested.

23   A plaintiff's allegations must rise above the level of mere speculation and must be

24   plausible on their face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-559, 127

25   S.Ct. 1955, 167 L.Ed.2d 929 (2007).  While for purposes of a motion to dismiss, all

26   allegations of material fact in the complaint are taken as true, a court "is not required

27   to accept legal conclusions in the form of factual allegations if those conclusions

28   cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness*

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc

USDC CASE NO.: C-09-03005 JW (HRL)          2

DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   *Network,* 18 F.3d 752, 754 (9th Cir. 1994); *Western Mining Council v. Watt,* 643 F. 2d

2   618, 623 (9th Cir. 1981); *Zella v. The E.W. Scripps Co.,* 529 F. Supp. 1124, 1127-8

3   (C.D. Cal. 2007).   When amendment of a complaint would be futile, dismissal should

4   be ordered with prejudice.   *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996).

5       **C.     A Court May Dismiss a Copyright Claim for Lack of Substantial**

6       **Similarity on a Rule 12(b) (6) Motion**

7           A trial court should dismiss a copyright claim pursuant to Rule 12(b)(6) where

8   either the evidence demonstrates that no reasonable jury could find the two works at

9   issue are substantially similar or the court determines that any such similarities pertain

10  only to unprotected elements in the works.   *Christianson v. West Publishing Co.,* 149

11  F. 2d 202, 203-204 (9th Cir. 1945) (affirming grant of 12(b)(6)motion); *Zella,* 529

12  F.Supp.2d at 1130-31 (granting 12(b)(6) motion); *Capcom Co., Ltd. v. MKR Group,*

13  Inc., 2008 WL 4661479, *9 (N.D. Cal.) (granting 12(b)(6) motion); *Thomas v. Walt*

14  *Disney Co.,* 2008 WL 425647, *5 (N.D. Cal.) (granting 12(b)(6) motion); *Nelson v.*

15  *PRN Prods.,* 873 F.2d 1141, 1143-44 (8th Cir. 1989) (affirming grant of motion to

16  dismiss based on lack of substantial similarity); *Randolph v. Dimension Films,* 630

17  F.Supp.2d 741, 749 (S.D. Tex. 2009)(granting motion to dismiss for lack of

18  substantial similarity); *Gottlieb Development LLC v. Paramount Pictures Corp.,* 590

19  F.Supp.2d 625, 634 (S.D.N.Y. 2008) (granting motion to dismiss where depiction of

20  plaintiff's pinball machine in a movie was de minimis); *Tessler v. NBC Universal,*

21  *Inc.,* 2008 WL 5781733, *3-4 (E.D. Va. 2008), *rejected in part on other grounds by*

22  2009 WL 866834.

23      **D.     The Court May Take Judicial Notice of The Two Works**

24          In ruling on a 12(b)(6) motion, a court can consider the contents of the parties'

25  works by taking judicial notice of them even if they are not attached to the complaint.

26  *In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405, n.4 (9th Cir. 1996)

27  ("Documents whose contents are alleged in a complaint and whose authority no party

28  questions, but which are not physically attached to the pleading, may be considered in

LEOPOLD, PETRICK
& SMITH
A Professional Corporation

USDC CASE NO.: C-09-03005 JW (HRL)        3

17792.doc            DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    ruling on a Rule 12(b)(6) motion to dismiss") (internal quotation marks and brackets

2    omitted); *Zella*, 529 F.Supp.2d at 1128; *Capcom Co., Ltd.*, 2008 WL 4661479 at *3;

3    *Thomas*, 2008 WL 425647 at *2, n.1.

4         In an application filed with this motion, Defendants request that the Court take

5    judicial notice of a certified copy of Plaintiff's 2000 screenplay *The Challenge*

6    submitted to the Copyright Office by Plaintiff, and a DVD of the animated motion

7    picture *Cars*, as there can be no disagreement or question about their authenticity.

8    (Defendants' Request for Judicial Notice pursuant to Rule 201 of the Federal Rules of

9    Evidence, 1:3-19.)[1]

10        **E.    Summary of Defendants' Motion Picture *Cars***

11        *Cars* is a lively family-oriented animated motion picture set in a fantasy world

12   where the characters are brightly colored talking cars.  The hero, voiced by Owen

13   Wilson, is a young racing car sensation named Lightning McQueen, a "sleek,

14   confident red race car" who is cheerfully arrogant about his success.  The movie opens

15   just before the Piston Cup race, similar to a NASCAR race.  McQueen wants to be the

16   first rookie to win and gain the sponsorship by Dinoco, a large rich corporation.

17   McQueen disdains his current sponsors, a bunch of old rusty cars who sell a bumper

18   ointment called Rust-Eze.  The young hero is completely self-centered and fails to

19   appreciate the cars that help him, from his pit crew to his regular driver, Mack, a semi

20   trailer truck.

21        His nemesis is Chick Hicks, a green racing car, voiced by Michael Keaton, who

22   is mean-spirited, fights dirty and has always come in second place in the Piston Cup.

23

24   ──────────────
     [1]   Defendants are also lodging a copy of the script for *Cars* as Exhibit C to the
     accompanying Notice of Lodging.  Defendants do not request that the Court take
25   judicial notice of Exhibit C and are lodging the document solely for the convenience
     of the Court and the parties for use as a reference aid.  The DVD of the motion picture
26   is the best evidence of the contents of the motion picture "because the works
     themselves, not descriptions or impressions of them, are the real test for claims of
27   infringement," and "in copyright infringement cases, the works themselves supersede
     and control contrary descriptions of them."  *Walker v. Time Life Films, Inc.*, 784 F.2d
28   44, 52 (2d Cir. 1986).

**USDC CASE NO.: C-09-03005 JW (HRL)**      4

1    The third significant contender is the past champion and current Dinico spokesperson,

2    "The King," an older car with a large tail fin who is wise and kind, voiced by Richard

3    Petty.  It is the last race of his career.

4        As two sports announcers narrate the race, McQueen, Chick and The King race

5    around the track in an extended scene.  Chick intentionally creates a multi-car crash so

6    as to block McQueen, who is behind him.  But, to the roar of the crowd, McQueen is

7    able to maneuver through it.  Meanwhile, The King races a smooth course.  At the

8    end, McQueen, Chick and King cross the finish line together and the race is too close

9    to call.  There will be a tie breaker race in California in a week's time.

10       After this announcement, The King graciously compliments McQueen but

11   rebukes him for his attitude: "This ain't a one man deal."  You need "good folks

12   behind you …it's about everybody coming together and doin' the best they can."

13   McQueen scoffs at this advice.  McQueen's fast- talking agent Harv offers him tickets

14   for his friends, but it is evident he has none.

15       Eager to get to California to practice on the course,  McQueen selfishly prods

16   Mack, a semi trailer-tractor in which he travels, to keep driving even when Mack says

17   he is too tired.  Mack falls asleep at the wheel and in the ensuing accident, the truck

18   door opens, releasing McQueen onto the interstate while Mack, unaware, drives on to

19   California.  McQueen, looking for the interstate, speeds into Radiator Springs, a

20   sleepy, dilapidated town near an Interstate which cuts through a beautiful desert with

21   similarities to Monument Valley, Arizona and Mexican Hat, Utah.  In an extended

22   comic scene, McQueen crashes into flowers, a tire store, and barbed wire, and drags a

23   statue down from its pedestal like a water skier, which tears up the town road.  When

24   he comes to a stop, he dangles from a telephone wire and is captured by the sheriff.

25       This is watched by the several residents of the small town Radiator Springs,

26   including Fillmore, a sleepy hippie VW bus, Sarge, a military jeep, Flo, a "gorgeous

27   classic car with large wings," who is the sweet, husky-voiced owner of Flo's diner,

28   Luigi, an Italian forklift who runs Luigi's tires and worships Ferraris, and a dimwitted,

1   buck toothed and rusted-out tow truck named Mater who operates the town's car

2   impound.

3       McQueen appears in court before a crusty judge named Doc Hudson, an old

4   blue Hornet (voiced by Paul Newman).  No one in Radiator Springs recognizes or

5   cares that McQueen is a racing star and the judge ignores his insistence that he must

6   get to California in time for the big race.  Sally, a beautiful blue Porsche (voiced by

7   Bonnie Hunt), appears in the courtroom.  McQueen patronizes her, assuming she will

8   be grateful to go on a date with him.  But she is the town prosecutor and she convinces

9   the judge to sentence McQueen to repair the road before he can go on to California.

10      The heart of the movie takes place in Radiator Springs where McQueen angrily

11  does the menial and arduous work of towing Bessie, a belching asphalt truck, down

12  the street.  His attempts to escape are foiled by the sheriff, who is not as sleepy as he

13  looks.  Doc, the judge, supervises his work, and teaches McQueen some humility and

14  respect for others.  McQueen is certain he can beat Doc in a race (a view shared by the

15  townspeople).  But Doc has correctly anticipated that McQueen, who has only raced

16  on a track, will not know how to take a curve on a dirt road.  After McQueen crashes,

17  Doc gives him advice on how to handle the curve, which advice McQueen rejects.

18  After many failed attempts, McQueen secretly tries Doc's advice and learns the

19  method.

20      Slowly, McQueen learns to be a better person as he interacts with the

21  townspeople.  He endures being spattered with asphalt.  To his surprise, Red, the fire

22  engine, washes him off.  When Sally invites him to stay at the Cozy Cone motel she

23  owns, where the garage cabins are shaped like giant caution cones, he thanks her.

24  After his early fast and sloppy attempt to repave the road, McQueen slows down,

25  works hard and does a perfect job.  He and Sally begin to fall in love in the most

26  innocent way. (Mater, the dim-witted rusty tow truck, on several occasions

27  embarrasses them by singing the children's chant that they are "sitting in a tree,

28  K-I-S-S-I-N-G.")

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

McQueen learns to appreciate the pleasures of small town life. Mater takes him "tractor tipping," in which cows are represented by tractors which moo.  They are later chased by a fierce tractor combine, but there is never any doubt that they will escape. To McQueen's amazement, rusty old Mater can drive backwards with amazing grace and speed.  But when McQueen casually promises Mater that he will arrange for Mater to ride in the Dinoco company helicopter if McQueen wins the Piston Cup, he has no intention of following through.  He waves off Sally when she criticizes him for this.  Sally suggests they go for a drive but has to teach McQueen that she means a leisurely drive, not a race, a novel concept for him.  He is overwhelmed with the stunning red rock landscape and a beautiful waterfall.  Sally tells him that she had been a successful lawyer in Los Angeles, but she wasn't happy until she moved to Radiator Springs.  McQueen is incredulous.

During this time, McQueen accidentally discovers that Doc had been a famous race car driver who won three Piston Cups.  Doc bitterly tells McQueen that he disdains his trophies as no more than "empty cups", explaining that he was in a serious car crash during a race.  After he recuperated, no one would give him a second chance, so he moved to Radiator Springs and turned his back on racing.  McQueen urges Doc to reconsider.  Doc storms out, but later, as McQueen watches from a distance and unseen, Doc races on a country road with his old flair.  McQueen has helped Doc as Doc has helped him.

Meanwhile, the semi tractor-trailer which transports McQueen has arrived at the Los Angeles International Speedway.  But when the truck door opens, McQueen is missing.  Television reporters around the world wonder where he is. Quick comic scenes show a number of famous people (transformed into cars), talking on television about Lightning's disappearance.  These include Arnold Schwarzenegger (a Hummer) and Jay Leno.

Back in Radiator Springs, McQueen finally finishes repairing the road. The townspeople think he has driven off to California without saying goodbye.  But he has

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

1  delayed another day to help each of the businesses in town. He buys organic fuel
2  from the hippie VW bus, Fillmore. He buys military equipment from the army
3  surplus store owner, Sarge. He helps Flo fix the diner. He buys four new whitewall
4  tires from Luigi. The town comes back to life, as exemplified by the addition of a
5  string of beautiful neon lights. But then he does leave, saying a sad goodbye to Sally.

6      The climactic scene is the final extended race in California. The Radiator
7  Springs townspeople have followed McQueen, who is happy to have Doc as a pit crew
8  chief and Luigi and Guido as his pit crew. Now McQueen understands what The King
9  told him, that he must trust and appreciate his team. Luigi and his assistant are
10  mocked by the slicker-looking pit crew of Click, Lightning's rival, but they triumph
11  when they turn out to be the best and fastest pit crew around.

12      The three contenders jockey for position throughout the exciting race. Chick
13  tries his usual dirty tricks, at one point pushing McQueen off the track into the dirt
14  center. But McQueen uses Doc's advice on how to take a turn on a dirt road and
15  regains his place on the track in record time. At another point, to Chick's amazement,
16  McQueen recovers by driving backward, a skill taught him by Mater. As the race
17  nears its end, McQueen is in first place and set to win the Piston Cup. But just then
18  Chick intentionally slams into The King, who flips over and crashes. McQueen
19  replays in his mind Doc's story about how no one cared when he crashed. McQueen
20  then screeches to a halt only inches from the finish line. There is a long moment of
21  suspense as we and the crowd wonder what will happen next. McQueen turns around,
22  and as Chick passes him to win the race, McQueen pushes The King over the finish
23  line so The King can finish the last race of his career with dignity. The crowd cheers
24  McQueen, not Chick.

25      The head of Dinoco asks McQueen to be their spokesman, explaining that there
26  is more to racing than winning. Before him shimmers all that McQueen had wanted,
27  the blue paint, the helicopter. But he turns down the offer and chooses to stay with
28  Rust-Eze because they gave him his start. Impressed and moved, the head of Dinoco

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc          DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   says he will do anything he can to help McQueen in the future.  McQueen smiles and
2   arranges for Mater to go up in the corporate helicopter.

3   In the final scene, McQueen returns to Radiator Springs where he now plans to
4   live.  He explains that he will bring his racing headquarters there to revitalize the
5   town.  We see three Ferraris go into Luigi's shop to buy new tires on McQueen's
6   recommendation.  Luigi bursts with happiness.  As the credits roll, we see the further
7   revitalization of the town.

8   **F.    Summary of Plaintiff's Screenplay *The Challenge***

9   The hero of *The Challenge* is hot-tempered Adam Noble, a seventeen-year-old
10  high school student.  He is angry with his father, formerly a successful race driver,
11  who is now an unemployed alcoholic after the death of Adam's mother in a car crash.

12  Adam is tormented by his rich classmate Craig Smart, who mocks Adam for his
13  dilapidated car, his poverty and his father's current state.  Adam fights back but is
14  humiliated.  Craig and his friends taunt Adam into a race, which Craig easily wins in
15  his expensive car.  Craig's beautiful girlfriend Angela is in Craig's car and she begs
16  Craig to help Adam but he drives away, leaving Adam, covered in mud, his car broken
17  down, in a vacant lot in the middle of the night.  The next day Adam returns to the lot
18  to find his car stripped for parts and unusable.  Adam, who is unable to afford the
19  clothes for the high school prom, watches as Craig and Angela enter the hotel where
20  the dance is being held.  But when Craig steps outside to meet his drug dealer, Angela
21  and Adam dance, to Craig's fury.  Craig hears his dealer talk about a major drug deal
22  which will go down in Mexico.

23  Adam's father is called to his school and is told that Adam, tired from working
24  after school to support his family, may flunk out.  Craig's father, the owner of a local
25  bank, is about to foreclose on their house.

26  Desperate to prove that he is not a "loser" and hoping to win the $10,000 purse
27  to prevent the foreclosure, Adam decides to enter an amateur Baja race, a seven
28  hundred mile, grueling, off-road race.  He convinces Rex, a family friend, to help him

**USDC CASE NO.: C-09-03005 JW (HRL)**          9

1   fix up an old car and, to Adam's surprise, his father comes to help him repair the race

2   car he used before he quit racing.

3        Adam takes his younger brother Josh with him to the race.  Craig has entered

4   the race as well, although we know, and others do not, that his real purpose is to

5   intercept the drug deal. Angela plans to follow a portion of the race in her expensive

6   SUV.  Adam's father has promised to come for the start of the race but fails to show,

7   to Adam's disappointment and disgust.

8        As the race starts, Craig challenges and tries to anger Adam, saying he doesn't

9   care about winning the race, only in humiliating Adam.  Adam plunges off the course

10  into a field of cactus where Craig does not want to go. Throughout the race Adam is

11  reckless, once nearly causing him and his brother Josh to drown in a flash flood.  At

12  another point he almost drives off a cliff side road.  Josh repeatedly asks Adam not to

13  endanger them but Adam ignores Josh and demeans him as a "wimp".  At one point,

14  Adam starts to drive off without Josh, saying he "would rather burn in hell" than let

15  Josh blow the race.

16       Despite his younger brother's warnings, Adam soon gets lost in the barren,

17  blazingly hot desert.   Upon reaching the Sea of Cortez, they stumble upon the drug

18  deal which has drawn Craig to Mexico. From a hidden place, Adam and Josh watch

19  the armed and dangerous drug dealers.  Craig, monumentally stupid, arrives and tries

20  to buy drugs at a low price. The dealers shoot at Craig, who runs away.  (We later

21  discover he is shot in the leg.)  Two hit men for the drug dealers shoot at Adam and

22  Josh, who narrowly escape and return to the car.

23       Adam and Josh then come upon an injured Angela.  Later, with Josh sleeping

24  nearby, she and Adam begin a sexual relationship.  As they continue to drive, lost,

25  through the desert, they become overwhelmed with dehydration and exposure.  This

26  culminates when their car breaks down in the salt flats. As they are all near death,

27  Adam's dead mother, wearing white robes and with the song "Hark the Herald Angels

28  Sing", appears to him..  She tells Adam to give up his false pride and stop endangering

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

1    his brother.  She also tells Adam that he covers up his hurt with bravado because he

2    fears he isn't loved.  Even though he fears that his father loves his brother more than

3    him, Adam's dead mother tells him he must learn to forgive and that unconditional

4    love is important.  Adam then flashes back to two scenes from his childhood. When he

5    was playing music with his family, his mother said that music is about harmony.

6    When he was playing Little League baseball, his father said that teamwork is

7    important.

8          Then Adam's father calls them on Angela's CB radio. He explains that he

9    missed the start of the race, not because he was drunk, but because Rex had a heart

10   attack.  When Adam describes where they are, his father says he knows the location

11   because he too broke down in that spot many years ago.  Adam asks for help but his

12   father comes upon Craig, who is nearly dying from a leg wound, and explains he has

13   to save Craig first.  Adam's father then urges Adam to keep going, telling him he

14   believes in him.  Adam, nearly delirious, accidentally chops off his finger.  As he

15   stands there bleeding and stunned, his brother puts the finger in ice.  Adam still insists

16   on being in charge and wants to drive but he nearly collapses.  He is forced to let Josh

17   takes over the wheel. Josh says that Adam must learn to trust his teammates.

18         When they finally reach a town, they are given food and water but Adam

19   refuses to stop, even though he knows the other racers have finished days earlier.  He

20   drives to another town where he crosses the finish line.  Along the way, people cheer

21   his tenacity.

22         Adam is then happily reunited with his father at a hospital.  Craig, transformed

23   (we are given no explanation), comes into Adam's hospital room to compliment him

24   and say how he was always jealous of Adam's father. Craig's grateful father, a

25   banker, says he has arranged for a six-month extension on the foreclosure of Adam's

26   house.  Adam says he no longer cares about being a celebrity, that what is important is

27   family and teamwork. As the story ends, Adam and his father have become a racing

28   team, with Josh in the secondary role of pit crew, as they are cheered by crowds and

1   sponsored by Chevrolet.

2   **II.    THE COPYRIGHT CLAIM**

3         To establish a prima facie case of copyright infringement, Plaintiff must present

4   substantial evidence that she owns a copyright and that Defendants (1) actually copied

5   (2) original, protected expression from her work. *Feist Publications, Inc. v. Rural*

6   *Tele. Serv. Co.*, 499 U.S. 340, 361, 1115 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ("Absent

7   copying there can be no infringement of copyright."); *Funky Films, Inc. v. Time*

8   *Warner Entert. Co.*, 462 F.3d 1072, 1081-82 (9th Cir. 2006); *Cavalier v. Random*

9   *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002); *Kouf v. Walt Disney Pictures &*

10  *Television*, 16 F.3d 1042, 1044, n.2 (9th Cir. 1994); 4 M. & D. Nimmer, *Nimmer On*

11  *Copyright*, ("*Nimmer*") § 13.01 at 13-4 to -5 (2009).

12        For purposes of this Motion only, Defendants will assume that Plaintiff owns a

13  valid U.S. copyright to *The Challenge* screenplay and that they had access to her

14  work. 4 *Nimmer*, § 13.01[A] at 13-6 to -8.  What remains to be determined is the

15  issue of "copying" of protected expression, which requires that Plaintiff properly

16  allege and prove two distinct elements:  actual copying and unlawful appropriation.  4

17  *Nimmer*, § 13.01[B] at 13-8 to -10.

18        **A.    Unlawful Appropriation ("Substantial Similarity of Protected**
            **Expression")**
19

20        Unlawful appropriation focuses on the legal issue of whether any alleged

21  copying extended beyond unprotectible facts, concepts or ideas (17 U.S.C. § 102(b))

22  to plaintiff's protectible expression, that is  "the actual concrete elements that make up

23  the total sequence of events and the relationships between the major characters."

24  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Neither "access" nor actual

25  copying is relevant to whether a defendant's work is substantially similar to protected

26  expression in a plaintiff's work. 4 *Nimmer*, § 13.03[D] at 13-90 to -92.  Thus, even if

27  a court assumes that a defendant had access to a plaintiff's work, there is no

28  infringement as a matter of law if the two works are not substantially similar. *See*

1    *Funky Films*, 462 F.3d at 1075 n.1, 1081-82 (no infringement even if access is

2    assumed); *Newton v. Diamond*, 388 F. 3d 1189, 1192-93 (9th Cir. 2004) ("even where

3    the fact of copying is conceded, no legal consequences will follow from that fact

4    unless the copying is substantial").

5         When, as in this case, non-identical works are compared, the "substantial

6    similarity" inquiry involves a legal or policy issue:  How far beyond the literal may a

7    plaintiff's copyright monopoly extend? *Harper House, Inc. v. Thomas Nelson, Inc.*,

8    889 F.2d 197, 201 (9th Cir. 1989); 4 *Nimmer*, § 13.03[A] at 13-34.1 to -37.  If a

9    plaintiff were allowed to extend his monopoly too far, liability would be imposed for

10   the "use" of unprotected ideas and facts – rather than protected expression – in

11   violation of the First Amendment and copyright policy.  *Feist*, 499 U.S. at 344-48,

12   349-50; *Harper & Row, Publishers v. Nation Enterprises*, 471 U.S. 539, 556, 85

13   L.Ed.2d 588, 105 S.Ct. 2218 (1985) (the idea/expression dichotomy strikes a

14   constitutional balance between copyright and free speech interests).

15        Because storytelling necessarily relies on the use of facts, ideas, clichés,

16   scénes-á-faire, conventions of story-telling and filmmaking not original to its author,

17   *see Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002), a plaintiff's dramatic

18   work is only protected from nearly verbatim copying of factual material or from the

19   comprehensive non-literal copying of its "story"  or "pattern,"  the original

20   arrangement of characters, their relationships and the essential sequence of events.

21   4 *Nimmer*, § 13.03[A][l][b]; *Williams v. Crichton*, 84 F.3d 581, 588-91 (2d Cir. 1996);

22   *Berkic*, 761 F.2d at 1293-94; *Olson v. National Broadcasting Co.*, 855 F.2d 1446,

23   1450 (9th Cir. 1988); *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990);

24   4 *Nimmer*, § 13.03[A][1] & [2]at 13-36 to -43 & 13-53 to -59.

25        To determine "substantial similarity" between works that are not literally

26   similar, the Ninth Circuit employs an "extrinsic" (*i.e.*, objective) and an "intrinsic"

27   (*i.e.*, subjective) test, originated in *Sid & Marty Krofft Television Productions, Inc. v.*

28   *McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) ("Krofft").  4 *Nimmer*,

17792.doc        DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  § 13.03[E][3] at 13-104 to –119.  The extrinsic test is to be applied by a court before

2  the trier of fact evaluates the intrinsic test.  Prompt dismissal of Plaintiff's Complaint,

3  with prejudice, is warranted under the extrinsic test.

4  **B.   Extrinsic Test**

5       Under the extrinsic test, the court must first "list and analyze" "specific criteria"

6  (eight factors for literary and dramatic works) in each work on an objective basis and

7  then compare the works with reference to those factors to determine if they are

8  substantially similar in protected "expression."  *Rice v. Fox Broadcasting Co.*, 330

9  F.3d 1170, 1174 (9th Cir. 2003); *Krofft*, 562 F.2d at 1164; *Kouf*, 16 F.3d at 1045.

10  "[T]his question may often be decided as a matter of law."  *Krofft*, 562 F.2d at 1164;

11  *Funky Films*, 462 F.3d at 1081-82; *Cavalier*, 297 F.3d at 824; *Kouf*, 16 F.3d at 1045;

12  *Berkic*, 761 F.2d at 1293; *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983).

13       Application of the extrinsic test filters out claimed "similarities" in

14  unprotectible elements, such as facts, ideas, clichés, scenes-à-faire,  and conventions

15  of story telling and filmmaking.  *Rice*, 330 F.3d at 1174-75; *Cavalier*, 297 F.3d at

16  823; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-43 (9th Cir. 1994);

17  *Kouf*, 16 F.3d at 1045; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475-

18  77 (9th Cir. 1992); *Berkic*, 761 F.2d at 1293; 4 *Nimmer*, § 13.03[A][1] at 13-33 to -43.

19  **1.   No Substantial Similarity as To Plot and Sequences of Events**

20       One of the most egregious misrepresentations in Plaintiff's Complaint is her

21  allegation that the plots of *The Challenge* and *Cars* are similar.  She alleges,

22  incorrectly, that both young heroes, lost in the desert and having learned from mentors

23  that "life is about friendship and teamwork, not self centered ego," "lose the race

24  because they take time to help someone else."  Cpt., ¶ 14(A); ¶ 14(G).  While this

25  concept about teamwork and friendship is true of the red race car character McQueen

26  in *Cars*, *The Challenge's* generic teenager Adam does not stop during his dangerous

27  Mexico off-road race to help others.  He loses his race because he gets lost in the

28  race's opening days.  There is no scene in which Adam helps another person, let alone

1  one in which he sacrifices winning to do so.

2      In fact, Adam's defining characteristics from beginning to end is his anger and

3  determination to prove himself.  As he is nearly dying in the desert, he is told that life

4  is about teamwork from his mother (who is either a mirage or an angel), but after that

5  he still tries to push his younger brother away so that he can be the driver despite a

6  serious injury.  When Adam's father tells Adam that he cannot come to his rescue

7  because he must save Adam's rival Craig, Adam does not applaud that decision.  He

8  does not express any concern when he hears that Rex, the man who helped him

9  prepare his car for his race, has had a heart attack.  In the hospital, while he states that

10 he has realized family and teamwork are more important than winning, the only

11 teamwork that we see is Adam teaming up with his father, a famous race car driver,

12 and accepting the sponsorship of Chevrolet.

13     Plaintiff also alleges, incorrectly, that there is a significant similarity in plot

14 because both heroes "get lost in the desert."  While it is true that Adam gets lost in

15 *The Challenge*, McQueen is never lost in *Cars*, other than his brief foray trying to

16 locate an Interstate entrance.  McQueen is firmly at home on two race tracks and

17 learns to fit in at Radiator Springs.  McQueen is never in any danger, let alone near

18 death.

19     In any event, the alleged similar plotlines are so generic that they are not

20 protected by copyright law.  A plot in which off-road racers get lost in a desert or a

21 young cocky athlete learns from a mentor the importance of teamwork cannot be

22 called original material.  As films such as *Rocky* illustrate, the story of a young hero

23 who learns that "winning isn't everything" is not remotely original.  As a matter of

24 law, copyright does not protect such a familiar story.  *Cavalier,* 297 F. 3d at 824;

25 *Berkic,* 761 F.2d at 1293.

26     **2.**   **No Substantial Similarity As To Characters**

27     None of the characters in the two stories are similar beyond the unprotected

28 generalization that the young heroes are cocky and early on think that life is about

LEOPOLD, PETRICH & SMITH
A Professional Corporation

1  "showing off." Cpt., ¶14 (A). Indeed, Plaintiff implicitly acknowledges the generic

2  nature of a "cocky kid" by putting that term in quotation marks in her complaint. Her

3  further allegation that the heroes are similar because they both "want to win a race to

4  prove they are important," is equally unavailing. Cpt., ¶14(B). Generic characters are

5  not entitled to any protection.

6      *Cars'* McQueen is already important and popular at the start of the film. He is a

7  sleek red race car, skilled and fast, competing at the highest levels. The point of the

8  story is that he undergoes a spiritual change so that he no longer wants only to be

9  "important." *The Challenge's* Adam starts out in Plaintiff's screenplay as the

10  opposite. He is angry and down and out. He is taunted and humiliated by Craig, about

11  to flunk out of school and lives in a depressing situation with an alcoholic father who

12  is unable to care for him. There is no similarity between these characters or the arc of

13  their development.

14      Plaintiff contends that McQueen and Adam are similar because both had "older

15  experienced mentors" or "role models" who were "former champion racers." Cpt.,

16  ¶14(A). This is not original material to which anyone can claim an exclusive

17  copyright. Given that the two stories focus on auto racing, it is hardly surprising that

18  the older mentor is a former racing champion. Such generalized "character types"

19  have appeared in numerous sports stories (e.g., *Rocky* and his trainer) and are not

20  protected by copyright law. *Rice*, 330 F.3d at 1175; *Kouf*, 16 F.3d at 1046; *Olson*,

21  855 F.2d at 1451-52; *Warner Bros. Inc. v. ABC*, 720 F.2d 231, 240 (2d Cir. 1983);

22  *Chase-Riboud v. Dreamworks, Inc.*, 987 F.Supp. 1222, 1228-29 (C.D. Cal. 1997)

23  (Collins, J.); *Cavalier*, 297 F. 3d at 825.

24      It is not surprising that Plaintiff does not contend that the two heroines, Sally

25  and Angela, are similar. Cpt., ¶14(C). *Cars'* Sally is an emotionally mature,

26  successful lawyer who teaches McQueen that it is more important to be a good person

27  than a race car champion. In contrast, Adam's love interest in *The Challenge*,

28  Angela, is such a stock romantic classmate figure that Plaintiff refers to in quotation

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

marks as "the girl."  Angela has no defining characteristics other than she is young,
warm-hearted, sexually attractive and rich.  She has no dialogue of significance.
Indeed it is telling that Plaintiff also refers to Angela under the category of "setting."
*Nichols v. Universal Pictures Corp.*, 42 F. 2d 119, 121 (2d Cir. 1930) ("[T]he less
developed the characters, the less they can be copyrighted"].

### 3.    No Substantial Similarity As To Themes

Plaintiff does not distinguish between plot and theme. Cpt., ¶ 14(A).  Her
misrepresentation that both McQueen and Adam learn the same "life lessons" is, as
discussed above, flatly wrong.  The universal theme that winning isn't everything is
certainly generic, and provides no basis for finding similarity between the two works.
*Cars*  contains the message that it is important to work hard, value friends, thank
people and keep your promises.  As Sally explains, all of America should slow down
and see the beauty of nature. Appreciate simple people, they can teach you lessons.
Give back to the community.  On the other hand, the overriding theme of *The
Challenge* is self-reliance.  The  most important thing is to keep fighting and not give
up, even if you can't win first place.  The world will appreciate your determination.

### 4.    No Substantial Similarity as to Settings

Plaintiff alleges that the settings in *Cars* and *The Challenge* are similar in two
respects, neither of which is valid.  She first contends that it is significant that both
stories are "set in the desert." Cpt., ¶14(C).  However, *Cars* is set in the desert only in
the sense that the town of Radiator Springs is surrounded by an American southwest
desert landscape.  The importance of the town setting is twofold.  First, it is a warm
community which values friendship over material success.  Indeed, this is why Sally
left Los Angeles to settle there.  Second, the commercial fate of the town is critical to
the story in *Cars*.  The other significant setting in *Cars* is the two bustling large
racetracks, set nowhere near a desert.

*The Challenge* begins in a rough urban setting, where the hero is menaced by
gangs and has his car stripped.  He is seen at a job he detests, a school where he

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc      DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

performs poorly, and his very unhappy home headed by an alcoholic, unreliable father. The second two-thirds of *The Challenge* is set in a barren blisteringly hot Mexican desert. In *Cars*, the beauty of the desert is a catalyst for emotional change for McQueen. In *The Challenge*, Adam experiences a foreign desert so harsh it almost kills him, which produces both a religious vision of his dead mother and the definition of his grit.

Plaintiff's second alleged similar setting is that *Cars* allegedly "include[s] a scene of the kid and the girl on a hill overlooking the city lights taken straight out of *The Challenge*". *Id.* This kind of backdrop for a romantic moment is ubiquitous. *Berkic*, 761 F.2d at 294 (depictions of "romantic frolics at the beach" are so commonplace as to be unprotectable); *Williams*, 84 F.3d at 589 (settings were scenes-a-faire that flowed from the concept of a dinosaur zoo). Furthermore, in neither work is this brief scene or setting critical.

### 5. There Is No Similarity as to Mood

Plaintiff's characterization of the mood of *The Challenge* as "one of an exciting 'action-adventure' with happy upbeat overtones through the participant's personalities" is both irrelevant and incorrect. First, it is irrelevant because the Ninth Circuit has specifically held that a comic mood is common to the genre of action adventure movies and therefore does not demonstrate substantial similarity. *Olson*, 855 F. 2d at 1451. Second, the defining mood of *The Challenge* – which portrays a very troubled teen, his depressed alcoholic father, his hostile high school, an attack by drug dealers, and the hero even chopping off his finger – is by no means one of "happy, upbeat overtones."

### 6. There Is No Similarity as to Pace

Plaintiff alleges only the most generic similarities of pace. Complaint ¶14(E). She contends the stories start at "high speed as the kids prepare for their races," slows down and then picks up again at the end. This is an incorrect characterization of *The Challenge,* which starts with a number of non-action scenes but then continues to its

1   conclusion with full tilt action. Similarities of mood and pace that are "common to [a]

2   genre," such as an action/adventure story, are unprotectible and "do not demonstrate

3   substantial similarity." *See Olson*, 855 F.2d at 1451. Furthermore, even if her

4   characterization of similarities between the pace of the two stories was accurate –

5   which it is not – "pace, without more, does not create an issue of overall substantiality

6   between the works." *Williams*, 84 F. 3d at 590.

7              **7.    No Substantial Similarity as to Dialogue**

8          Plaintiff alleges "numerous similarities" in dialogue but fails to quote a single

9   line. She makes only the vague statement that there are similar "conversations

10  between the racers and their mentors," the "racers and the 'girls,'" and "the racers and

11  the other characters." Cpt., ¶14(F). This is so general as to be without value. One of

12  the hallmarks of *Cars* is the playful dialogue, with occasional sophisticated references

13  targeted to adults in the audience. In contrast, *The Challenge's* dialogue is short and

14  without embellishment. *Narrell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989)

15  ("Ordinary phrases are not entitled to copyright protection"). Similarly, where there

16  are limited ways of expressing an idea or an action, *e.g.,* "he died," idea and

17  expression are merged and not protected by copyright. *Rice*, 330 F.3d at 1174-75.

18         In summary, there is no similarity, let alone substantial similarity, between the

19  family animated comedy *Cars* and the gritty teenage drama about triumph over a

20  tragic home life and dangerous landscape in *The Challenge*. Each of Plaintiff's

21  alleged similarities are no more than abstractions, so vague and generic that her

22  complaint should dismissed at the pleading stage. *Williams*, 84 F. 3d at 583-87,

23  *Walker*, 784 F.2d at 46 (comparing the book "Fort Apache" and the film "Fort

24  Apache: The Bronx"); *Zella*, 259 F. Supp. at 1138. *See also Kouf*, 16 F.3d at 1046;

25  *Litchfield v. Spielberg*, 736 F. 2d 1352, 1356 (9th Cir. 1994); *Berkic*, 761 F.2d at 1293.

26         Thus, Plaintiff's first cause of action should be promptly dismissed, without

27  leave to amend. No additional allegations can change the two works at issue or

28  otherwise salvage her copyright claim.

**USDC CASE NO.: C-09-03005 JW (HRL)        19**

### III.   PLAINTIFFS' STATE LAW CLAIMS OF UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST ARE TIME-BARRED

Both of Plaintiff's state law claims for quasi contract and constructive trust are barred by California's two-year statute of limitations, which applies to any "action upon a contract, obligation or liability not founded upon an instrument of writing." Cal. Civ. Proc. § 339(1); *Filet Menu, Inc. v. Cheng*, 71 Cal. App. 4th 1276, 1280, 84 Cal.Rptr.2d 384 (1999) (Actions in quasi-contract are subject to two- year statute of limitations); *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds*, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (claims against the maker of a movie for breach of implied and oral contracts governed by two year statue of limitations); *See also* 3 B. Witkin, Cal. Procedure, Actions, §482 at page 616 (5th ed. 2008).

In her complaint, Plaintiff alleges that she saw *Cars* and discovered Defendants' alleged infringement in August 2006. Cpt., ¶13. She filed her complaint on July 6, 2009, more than two years later. Her state law claims are therefore time-barred and should be promptly dismissed without leave to amend.

### IV.   PLAINTIFF' STATE LAW CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT

In her claims for unjust enrichment and constructive trust, Plaintiff repeats her allegations that Defendants copied and unlawfully profited from her work. She does not allege any additional facts beyond those alleged in her copyright claim and her state law causes of action do not include any element not included in that copyright claim. Thus, the two state law claims are squarely preempted and should be immediately dismissed because they assert rights that are equivalent to her federal copyright claim.. *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (claims of unjust enrichment preempted by Copyright Act), *reversed on other grounds by Fogerty v. Fantasy, Inc.* (1994) 510 U.S. 517, 534; 114

---

USDC CASE NO.: C-09-03005 JW (HRL)          20

1   S.Ct. 1023; 127 L.Ed.2d 455; *Laws v. Sony Music Entertainment, Inc.*, 294 F.Supp.2d

2   1160, 1161, 1165 (C.D. Cal. 2003) (claims of constructive trust preempted by

3   Copyright Act). *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th

4   Cir. 2006), *cert. denied*, 549 U.S. 1252, 127 S.Ct. 1371, 167 L.Ed.2d 159 (2007).

5   A two-part test is employed to determine whether the Copyright Act preempts a

6   state law claim[2]: (1) the work at issue falls within the subject matter of copyright; and

7   (2) the rights granted under state law are equivalent to those protected by the Act.  17

8   U.S.C. §301; *Del Madera*, 820 F.2d at 976; *Laws*, 448 F.3d at 1137-1138; *Mattel,*

9   *Inc. v. Bryant*, 441 F.Supp.2d 1081, 1092-1093 (C.D. Cal. 2005); *Idema v.*

10   *Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1189 (C.D. Cal. 2001).

11   Regarding the first prong, works fall within the subject matter of the Copyright

12   Act when they are "original works of authorship fixed in any tangible medium of

13   expression ...." 17 U.S.C. § 102(a).  "Works of authorship" are defined to include

14   literary works, dramatic works, and motion pictures. *Id.*  Derivative works also fall

15   within the subject matter of copyright.  17 U.S.C. § 103(a).[3]

16

17   [2]   The fact that a state law claim is labeled as something other than copyright
18   infringement (i.e., conversion, unjust enrichment) does not mean that it is not
     preempted by the Copyright Act. *United States ex rel. Berge v. Board of Trustees of*
     *University of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997), *cert. denied*, 522 U.S.
19   916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997).
20   [3]   Also subject to preemption are claims which allege unauthorized use of "ideas,"
     when those ideas are contained in works within the subject matter of copyright.
21   Although the Copyright Act does not protect ideas, 17 U.S.C. § 102(b), a cause of
     action that alleges unauthorized use of "ideas" is still be preempted because the scope
22   of the Act's preemption is broader than the scope of its protection.  If a plaintiff
     asserts a claim for misuse of ideas contained in a work that falls within the subject
23   matter of copyright, and if the claim asserts rights equivalent to those under copyright,
     the claim is preempted. *E.g., United States ex rel. Berge v. Board of Trustees of*
24   *University of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997) (holding that state law
     conversion claim, which alleged theft of ideas embodied in a work covered by the
25   Copyright Act, was preempted, and noting that "the shadow actually cast by the Act's
     preemption is notably broader than the wing of its protection."); *National Basketball*
26   *Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849-850 (2d Cir. 1997); *ProCD, Inc. v.*
     *Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996); *Wrench LLC v. Taco Bell Corp.*, 256
27   F.3d 446, 454-455 (6th Cir. 2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151
     L.Ed.2d 885 (2002); *Entous v. Viacom International, Inc.*, 151 F.Supp.2d 1150, 1159
28   (C.D. Cal. 2001) ("While 'ideas' do not enjoy copyright protection, courts have
     consistently held that they fall within the 'subject matter of copyright' for the

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

USDC CASE NO.: C-09-03005 JW (HRL)        21
17792.doc          DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    The second prong is satisfied whenever the rights protected by state law are

2  "equivalent" to the exclusive rights protected by the Copyright Act. Those rights

3  include the rights "to reproduce the copyrighted work," "to prepare derivative works

4  based upon the copyrighted work," "to distribute copies . . . of the copyrighted work

5  to the public," "to perform the copyrighted work publicly," and "to display the

6  copyrighted work publicly." 17 U.S.C. § 106. In order to avoid preemption, the state

7  cause of action must protect rights which are qualitatively different from those rights.

8  *Laws,* 448 F.3d at 1143 (quoting *Del Madera,* 820 F.2d at 977). "'The state claim

9  must have an extra element which changes the nature of the action.'" *Id.* If the

10  additional element does not transform the underlying nature of the action, the state law

11  claim will be subject to preemption. *Id.* at 1144-1145 (holding that state law right of

12  publicity claim, which alleged the unauthorized use of a music sample, was preempted

13  by copyright even though it contained an additional element requiring proof of use for

14  a commercial purpose, because the additional element did not "qualitatively

15  distinguish" the claim from copyright).

16    It is well settled that unjust enrichment and quasi-contract claims alleging

17  unauthorized use of a copyrighted work are preempted by the Copyright Act. Such

18  claims assert rights equivalent to those under copyright and do not contain an "extra

19  element" changing the nature of the action. *E.g., Del Madera,* 820 F.2d at 977

20  (affirming dismissal of unjust enrichment claim); *Systems XIX, Inc. v. Parker,* 30

21  F.Supp.2d 1225, 1231 (N.D. Cal. 1998); 1 M. & D. Nimmer, *Nimmer on Copyright,*

22  "Constitutional Aspects," Section 1.01[B][1][g], at 1-51 (2009) ("[A] state law cause

23  of action for unjust enrichment or *quasi* contract should be regarded as an 'equivalent

24  right' and hence, pre-empted insofar as it applies to copyright subject matter."); *see*

25  *also Klekas v. EMI Films, Inc.,* 150 Cal.App.3d 1102, 1110-1111 (1984) (noting the

26  proof required to recover on a theory of implied-in-law contract, or "quasi-contract,"

27

28  purposes of preemption analysis."); *Maheu v. CBS, Inc.,* 201 Cal.App.3d 662, 672
(1988) (noting scope of copyright preemption and protection are not synonymous).

**USDC CASE NO.: C-09-03005 JW (HRL)**       22

17792.doc       DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

1   is the same as that required to prove the tort of plagiarism, and holding that such

2   claims are preempted by the Copyright Act).[4]

3         Plaintiff's second cause of action for unjust enrichment and quasi-contract also

4   fully satisfies both prongs of the two-part preemption test. It is beyond dispute that

5   Plaintiff's screenplay *The Challenge* falls within the "subject matter" of copyright.

6   Cpt., ¶10; 17 U.S.C. § 102(a).[5] Moreover, Plaintiff makes no effort to disguise the

7   fact that the rights asserted under her unjust enrichment claim are precisely equivalent

8   to those conferred by the Copyright Act: "[D]efendants have improperly used, copied,

9   reproduced, marketed, distributed, and/or sold products infringing on plaintiff's

10  copyright of *The Challenge* without any license having been granted by plaintiff to do

11  so." Cpt., ¶22. As Plaintiff's second cause of action is predicated solely on the

12  alleged unauthorized use of a copyrighted work and alleges no extra element

13  distinguishing – qualitatively or otherwise – the rights at issue from those conferred

14  by copyright, it is preempted.

15        Similarly, Plaintiff's third claim for constructive trust and accounting asserts no

16

---

17  [4]  Other circuits also follow this mandate. *E.g., Ehat v. Tanner*, 780 F.2d 876, 877-

18  78 & n. 2 (10th Cir. 1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39
    (1986) (finding unjust enrichment claim alleging that the defendant profited from use

19  of literary material was preempted); *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373
    F.3d 296, 306 (2d. Cir. 2004), *cert. denied*, 544 U.S. 949, 125 S.Ct. 1704, 161

20  L.Ed.2d 525 (2005) ("Plaintiffs seek to protect their alleged interests in 'The Thin Red
    Line' under the theory that Phoenix was unjustly enriched by turning Jones' novel and

21  Malick's screenplay into a motion picture without compensating Briarpatch or
    obtaining Briarpatch's permission. From this, it is clear that the specific right they are

22  trying to enforce is the right of adaptation- i.e., the right to prepare or authorize
    preparation of a derivative work based on a novel or screenplay. See 17 U.S.C. §

23  106(2)."); *Am. Movie Classics Co. v. Turner Entm't Co.* 922 F.Supp. 926, 934
    (S.D.N.Y. 1996) ("preemption is appropriate because AMCC's unjust enrichment

24  claim does not allege that defendants were enriched from anything other than their
    unauthorized exhibition of the copyrighted films-a claim which is equivalent to the

25  exclusive right of public performance provided by the Copyright Act. Thus, the claim
    does not possess the 'extra element' required to avoid preemption.")

26  [5]  In addition to alleging unauthorized use of her screenplay, Plaintiff suggests
    Defendants used "ideas" contained within the screenplay. Cpt., ¶¶ 12, 14. However,

27  claims alleging unauthorized use of "ideas" contained within copyrighted works are
    subject to preemption, just as are claims alleging unauthorized use of the works

28  themselves. *See Note 3, supra.*

1   rights other than those protected by copyright.  Cpt., ¶¶27, 28, 31 (alleging "wrongful

2   use of plaintiff Campbell's copyrighted work," "use [of] her copyrighted material

3   without just compensation," and "infringement of plaintiff Campbell's copyright...").

4   As such, it too is preempted.  *Laws v. Sony Music Entertainment, Inc.*, 294 F.Supp.2d

5   1160, 1161, 1165 (C.D. Cal. 2003) (holding state law claim for constructive trust

6   preempted by copyright law); *Motown Record Corp. v. George A. Hormel & Co.*, 657

7   F.Supp. 1236, 1241 (C.D. Cal. 1987) ("[T]he facts alleged in support of separate

8   causes of action for both the accounting and the constructive trust claims are rooted

9   primarily on contentions that defendants infringed on plaintiffs' copyrighted work.

10  Plaintiffs['] separate causes of action for accounting and constructive trust are

11  therefore preempted.").

12      Thus, Plaintiff's second and third causes of actions are barred by the federal

13  Copyright Act and should be promptly dismissed without leave to amend.

14  **V.    CONCLUSION**

15      Defendants respectfully request that Plaintiff's Complaint be dismissed with

16  prejudice in its entirety.

17

18

19  DATED:  January 7, 2010

19                                          LOUIS P. PETRICH
20                                          ABIGAIL A. JONES
                                            ELIZABETH L. SCHILKEN
                                            LEOPOLD, PETRICH & SMITH
21                                          A Professional Corporation
                                            Attorneys for Defendants
22                                          The Walt Disney Company, Walt Disney
                                            Pictures, Disney Book Group, LLC,
23                                          Disney Enterprises, Inc., and Pixar

24

25

26

27

28

LEOPOLD, PETRICH
& SMITH
A Professional Corporation
17792.doc                    DEFENDANTS NOTICE & MOTION TO DISMISS
                    MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274**.

On January 7, 2010, I served the foregoing document described as **NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANTS THE WALT DISNEY COMPANY, WALT DISNEY PICTURES, DISNEY BOOK GROUP, LLC, DISNEY ENTERPRISES, INC., AND PIXAR; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒ **BY REGULAR MAIL:** I deposited such envelope in the mail at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274.  The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported.  Said fax transmission(s) were directed as indicated on the service list.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) by electronic mail, and no error was reported.  Said electronic mail transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT MAIL:** I deposited such documents at the Federal Express Drop Box located at 2049 Century Park East, Suite 3110, Los Angeles, California 90067-3274.  The envelope was deposited with delivery fees thereon fully prepaid.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 7, 2010, at Los Angeles, California.

Cynthia A. Touchard

**USDC CASE NO.: C-09-03005 JW (HRL)**

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc

DEFENDANTS NOTICE & MOTION TO DISMISS
MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

**SERVICE LIST**

2

3    Kathleen C. Campbell                              *Plaintiff In Pro Per*
     207 West Los Angeles Avenue, #273
4    Moorpark, California  93021                       Tel:  (805) 906-9104
                                                        E-Mail:  katcamp@gmail.com
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**USDC CASE NO.: C-09-03005 JW (HRL)**

LEOPOLD, PETRICH
& SMITH
A Professional Corporation

17792.doc         DEFENDANTS NOTICE & MOTION TO DISMISS
           MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF